UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

KENYA BROWN,

Defendant.

**DECISION AND ORDER**

6:13-CR-06006 EAW
6:18-CV-06024 EAW

## INTRODUCTION

Petitioner Kenya Brown ("Petitioner") was sentenced on December 28, 2016, to an aggregate prison sentence of 248 months and a five-year term of supervised release after pleading guilty to count one of a superseding indictment charging conspiracy to possess with intent to distribute, and to distribute, five kilograms or more of cocaine and 280 grams or more of cocaine base in violation of 21 U.S.C. § 846, and to count two charging possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). (Dkt. 224; Dkt. 226; Dkt. 261; Dkt. 263).[1] Previously, this Court denied Petitioner's *pro se* petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, including rejecting Petitioner's claim that he was denied effective assistance of counsel with respect to post-sentencing proceedings when his attorney, Joseph S. Damelio, did not file a notice of appeal. (Dkt. 292; Dkt. 333). The Second Circuit Court of Appeals

[1] The case was originally assigned to the Honorable Charles J. Siragusa, but was transferred to the undersigned on December 18, 2014. (Dkt. 175).

granted a certificate of appealability limited to the issue of "whether the district court correctly denied [Petitioner's] 28 U.S.C. § 2255 motion . . . without a hearing or affidavit from [Mr. Damelio] . . . responding to [Petitioner's] claim that Damelio failed to file a direct appeal after [Petitioner] requested him to do so." (Dkt. 385 at 2).

The Second Circuit remanded the matter for further proceedings on this issue. The undersigned held an evidentiary hearing, after which post-hearing submissions were filed by the parties. The following constitutes the Decision and Order of the Court.

## BACKGROUND AND FINDINGS OF FACT

The Court assumes familiarity with the procedural and factual background of this matter up until the Court issued its Decision and Order denying the § 2225 petition on September 24, 2020. (Dkt. 333).

### A. Second Circuit Decision to Remand

As explained by the Second Circuit, while Petitioner's *pro se* petition raised six grounds for relief, a certificate of appealability was granted "limited to the issue of 'whether the district court correctly denied [Petitioner's] 28 U.S.C. § 2255 motion . . . without a hearing or affidavit from his defense counsel at sentencing, Joseph S. Damelio, responding to [Petitioner's] claim that Damelio failed to file a direct appeal after [Petitioner] requested him to do so.'" (Dkt. 385 at 2). On appeal, the Second Circuit determined that "the record is inconclusive as to whether [Petitioner] directed his counsel to file a notice of appeal." (*Id*. at 4).

On remand, the undersigned appointed the Federal Public Defender's Office to represent Petitioner, and an evidentiary hearing was scheduled to commence on April 20, 2023. (Dkt. 394).

**B. <u>Proof Offered at Evidentiary Hearing</u>**

The only testimony offered at the evidentiary hearing was from the government's witness Mr. Damelio. (*See* Dkt. 401 at 43-44 (government confirming that Mr. Damelio was only witness and Petitioner's counsel confirming that they were not presenting any witnesses)).

Mr. Damelio testified that he is an award-winning attorney who has been licensed to practice law for over 25 years and his primary area of practice is criminal defense. (*Id.* at 5-6). He testified that he has represented "well [] over a hundred" defendants in federal court in this District who have pleaded guilty pursuant to a written plea agreement. (*Id*. at 6-7). Mr. Damelio repeatedly testified that even when there is an appellate waiver in the plea agreement, he will file a notice of appeal on behalf of his client if requested and he has done so in the past. (*Id*. at 7-9, 31, 39, 41). Under such circumstances, he drafts a memo to the file confirming his client's request to appeal notwithstanding the appellate waiver. (*Id*. at 9).

Mr. Damelio explained that he took over the representation of Petitioner in December 2016, after the plea agreement had already been entered into and Petitioner's attorney passed away unexpectedly. (*Id*. at 12).[2] Mr. Damelio represented Petitioner at his

---

2 In total, Petitioner was assigned five separate attorneys under the Criminal Justice Act to represent him during the proceedings before the District Court. Originally David

sentencing hearing on December 28, 2016, when the undersigned imposed a sentence of 248 months—at the low end of the Sentencing Guidelines range. (*Id*. at 12-14). Although Mr. Damelio was not able to recall if he talked to Petitioner after the sentencing outside of the courtroom in the Marshals lock-up area in the back (*id*. at 38),[3] Mr. Damelio testified that Petitioner never expressed any dissatisfaction with the sentence imposed, he never asked that an appeal be filed, and he never even mentioned anything about an appeal (*id*. at 14). For instance, some of Mr. Damelio's testimony was as follows:

---

Morabito represented Petitioner. (Dkt. 3). Petitioner complained to the court about Mr. Morabito's representation (Dkt. 112), and while that particular issue was resolved (Dkt. 111) ultimately new counsel was assigned (although it is not clear from the docket the reason for that new assignment, which occurred prior to the undersigned's involvement) (*see* Dkt. 151; Dkt. 154). In May 2014, Joel Krane was assigned to represent Petitioner. (Dkt. 154). Mr. Krane moved to withdraw based on various issues that arose during his representation, including allegedly false allegations that Petitioner made about Mr. Krane (*see* Dkt. 168), and Kevin McKain was assigned as new counsel in October 2014 (Dkt. 169). Mr. McKain represented Petitioner at his plea hearing before the undersigned on June 14, 2016 (Dkt. 226)—occurring three months before the scheduled trial date (*see* Dkt. 215) (the third such trial date in this case (*see* also Dkt. 137; Dkt. 172)). Petitioner then filed a motion to withdraw his plea alleging that he had been "duped" and Mr. McKain had been ineffective. (Dkt. 239). Mr. McKain was relieved as counsel and Paul MacAulay was appointed as counsel. (Dkt. 238; Dkt. 243). Petitioner suggests that Mr. McKain was relieved as counsel because of his death (*see* Dkt. 402 at 6), but that is not correct—while Mr. McKain did subsequently pass away, that was not the reason he was relieved as counsel. After Mr. MacAulay was appointed, Petitioner then withdrew his motion to withdraw his plea, and sentencing was scheduled for December 19, 2016. (Dkt. 246). However, Mr. MacAulay unexpectedly passed away and Mr. Damelio was formally appointed as Petitioner's fifth attorney on December 13, 2016. (Dkt. 253). Sentencing was rescheduled for December 28, 2016. (*Id*.).

[3] Contrary to Petitioner's attempts to argue that Mr. Damelio could not recall specific conversations with Petitioner after the sentencing (*see*, *e.g.*, Dkt. 405 at 3), the Court interpreted Mr. Damelio's testimony as expressing uncertainty as to where the discussions took place (*i.e.*, only in the courtroom or also in the Marshals lock-up area in the back (*see* Dkt. 401 at 38)), but no uncertainty that Petitioner did not express dissatisfaction with the sentence or a desire to pursue an appeal (*see*, *e.g.*, *id.* at 14, 41).

Q Did [Petitioner] ever express to you any dissatisfaction with the sentence that he received from Judge Wolford?

A No.

Q Either in court or after?

A No.

Q At any point did [Petitioner] ever ask you to appeal the sentence imposed by Judge Wolford?

A No.

Q At any point did [Petitioner] ever ask you to file a notice of appeal?

A No.

(*Id.*).

Q Do you have any doubt whatsoever that [Petitioner] did not ask you to file a notice of appeal on his behalf?

A No.

Q Do you have any doubt?

A No, I don't.

(*Id.* at 15).

**C. Petitioner's Proof**

Petitioner elected not to testify at the evidentiary hearing or submit any other proof. (*Id.* at 44). However, he did expressly request that the Court consider his prior submissions. (*Id.*).

Those prior submissions include the original petition where, under the penalty of perjury, Petitioner stated that his "attorneys knew that [he] was unhappy with the process

and the sentence" and "[c]ounsel did not advise [him] of the law or consult with [him] on the consequences of not filing a direct appeal." (Dkt. 292 at 12, 21). Petitioner further stated that "[i]f counsel had advised and consulted, then [he] would have appealed." (*Id.*).

Then, in a document entitled "traverse," also submitted under penalty of perjury, Petitioner stated that "counsel did not consult with [him] concerning the advantages and disadvantages of filing a direct appeal this court imposed its sentence" and that he was "vocally unhappy with the sentence [and] misunderstood the consequences of not filing a direct appeal." (Dkt. 305 at 6, 8).

Over a year later, on September 12, 2019, Petitioner filed an affidavit where he stated as follows:

> Immediately after sentencing upon the United States Marshalls [sic] returning me to the holding are [sic], I was escorted and visited in the client/ attorney visiting room. This room is located in the Federal Building and where Mr. Damelio and I discussed the circumstances of my sentencing. I informed him of my dissatisfaction with my sentence. I clearly stated my desire to appeal and requested that Mr. Damelio file a notice of appeal on my behalf. Mr. Damelio expressed that an appeal was not possible due to the waiver. Even though he stated that an appeal was not possible due to my waiver, he stated that he would convey my desire to appeal with the District Court. I believed his statement to mean that he would nonetheless file my notice of appeal.

(Dkt. 315 at 1).

### D. Post-Hearing Submissions

Petitioner filed his post-hearing submission on June 8, 2023 (Dkt. 402), the government responded on July 21, 2023 (Dkt. 404), and Petitioner filed a reply on August 4, 2023 (Dkt. 405), at which time the matter was taken under advisement.

In his post-hearing submission, Petitioner argued that Mr. Damelio failed to follow his clear instruction to appeal. (Dkt. 402 at 10-15). Petitioner alternatively argued that even if his instruction to file a notice of appeal was not clear, Mr. Damelio failed to adequately consult with him and, thus, deprived him of his right to appeal. (*Id*. at 15-19). Finally, Petitioner argued that at the very least, the Court should construe the petition as a request to file a late notice of appeal under Rule 4(b)(4) of the Federal Rules of Appellate Procedure and exercise its discretion to permit Petitioner to file a late notice of appeal. (*Id*. at 19-21).

In response, the government argued that Petitioner had failed to carry his burden of demonstrating that Mr. Damelio provided ineffective assistance of counsel: "Mr. Damelio, an accomplished 30-year veteran defense attorney, testified clearly and without hesitation that [Petitioner] never asked him to file an appeal." (Dkt. 404 at 3). The government argued that the Court should credit "the unambiguous and unimpeached testimony of Mr. Damelio over [Petitioner]'s inconsistent and belated self-serving writing, and find that [Petitioner] did not ask Mr. Damelio to file an appeal." (*Id*. at 3-4). The government further argued that Petitioner failed to establish that there was any reason Mr. Damelio would think he wanted to appeal (*id*. at 11-12), and that the Court should reject Petitioner's alternative argument that he be granted leave to file a late notice of appeal (*id*. at 12-13).

In his reply memorandum, Petitioner argues that his recitation of events by affidavit is more reliable than Mr. Damelio's live testimony (Dkt. 405 at 2-4), that Mr. Damelio failed to adequately consult with Petitioner about his right to appeal and thus deprived him of an appeal (*id*. at 4-5), and that alternatively a late notice of appeal should be permitted

because of the "evident gaps in representation stemming from the untimely deaths of two of [Petitioner's] attorneys" (*id*. at 6).

### E. <u>Findings of Fact</u>

The essential fact that the Court must resolve is whether, as defense counsel argues, "Mr. Damelio's conduct cost [Petitioner] the appeal." (Dkt. 402 at 5). The Court concludes that it did not. The Court finds that Petitioner never requested, either expressly or implicitly, that Mr. Damelio file a notice of appeal on his behalf, and furthermore, Mr. Damelio would have no reason to believe that Petitioner wanted to pursue an appeal. Indeed, the Court concludes that Petitioner never voiced any dissatisfaction with his sentence and he never desired to pursue an appeal until he elected to raise the claim over one year after his sentencing in his § 2255 petition. Petitioner's claims to the contrary are false and not credible.

The Court found Mr. Damelio to be an entirely credible witness. While his recollection of all interactions with Petitioner some seven years ago was not without some gaps, there was no question that Petitioner did not ask him to file an appeal, Petitioner expressed no dissatisfaction with the sentence imposed (at the low end of the Sentencing Guideline range and consistent with the plea agreement), and Mr. Damelio understood his obligation to file an appeal if asked by a defendant, so that if Petitioner had requested him to file an appeal he would have done so even if there was no merit to the appeal. By

contrast, Petitioner's sworn written statements[4] do not overcome the credible testimony offered by Mr. Damelio.

Petitioner contends that "Mr. Damelio had no specific recollection of any conversation with Mr. Brown" (Dkt. 402 at 5), but that is not an accurate recitation of the testimony. Again, while there were some understandable gaps in Mr. Damelio's memory from his representation of Petitioner for a period of a few weeks some seven years ago, he was unequivocal in the fact that Petitioner did not ask him to file an appeal, Petitioner was not dissatisfied with the sentence, and Petitioner never suggested otherwise.

Petitioner also contends that "Mr. Damelio's testimony and other record evidence shows that, consistent with [Petitioner's] statements, Mr. Damelio presumptively did not file appeals for clients, like [Petitioner], who entered into plea agreements that contained waivers of appellate rights and emphasized such waivers in conversation with those clients." (Dkt. 402 at 5-6). Again, this is not an accurate recitation of the hearing

---

[4] The Court previously found that Petitioner's written statements contradicted each other because "Petitioner first contended that he did not appeal because he did not know the consequences of not appealing, and later stated that he did request an appeal but counsel failed to file it." (Dkt. 333 at 15). However, the Second Circuit disagreed, finding that the "[t]hese statements might be reconcilable with additional context, or one or both accounts may turn out to be false. But we do not believe that the record is conclusive on that point." (Dkt. 385 at 4). Petitioner did not provide any additional context at the evidentiary hearing. The Court finds Mr. Damelio's testimony persuasive and credible, and more reliable than the different scenarios portrayed by Petitioner in writing. *See, e.g., Davis v. New York City Housing Auth.*, 166 F.3d 432, 438 (2d Cir. 1999) ("When a factual issue is disputed, oral testimony is preferable to affidavits."); *Howell v. Superintendent Albion SCI*, 978 F.3d 54, 61-62 (3d Cir. 2020) (remanding habeas case and directing district court to re-evaluate petitioner's claim of actual innocence and hold evidentiary hearing, and explaining that "[i]t should be helpful to hear the live testimony of Hearst, Williams, Jones, and Parnell in order to judge their credibility on the stand, rather than only through their affidavits").

testimony. Instead, Mr. Damelio clearly testified that he understood his obligations to file an appeal on behalf of a client when requested to do so—even if there was an appellate waiver and the appeal had no merit. And he also testified that he had filed notices of appeal in the past when requested to do so, even though the client had waived any appeal rights. (Dkt. 401 at 8, 32). The fact that Mr. Damelio could not recall the specific name of any such defendant does not undermine his testimony in this regard nor does it mean that he somehow was in the practice of disregarding his client's requests to pursue an appeal.

Petitioner cited to two other clients of Mr. Damelio's—Johnny Blackshell and Ted Lee Francis—and contends that the fact they "resorted to filing notices of appeal pro se supports a finding of a misunderstanding or mistake here." (Dkt. 402 at 14). The Court finds that argument wholly unpersuasive. In the case of Mr. Blackshell, the record reflects that he mailed a pro se notice of appeal to the Clerk's office before the judgment was even entered in the case, (*see United States v. Blackshell*, Case No. 6:17-cr-06133-CJS, Dkt. 43 at 2 (W.D.N.Y. Feb. 14, 2018)), and there is nothing before the Court suggesting that Mr. Damelio somehow failed to follow Mr. Blackshell's instructions and file a notice of appeal. With respect to Mr. Francis, the record in that case reflects that Mr. Damelio reviewed Mr. Francis' appeal rights with him both before his plea entry and his sentencing, and that ultimately the notice of appeal was withdrawn by stipulation. (*See United States v. Francis*, Case No. 6:02-cr-06099-CJS-JWF, Dkt. 98 at 6 (W.D.N.Y. June 10, 2016)). In other words, the fact that, of the over one hundred clients that Mr. Damelio has represented in federal court, Petitioner cited to two instances where Mr. Damelio's former clients filed a pro se notice of appeal has little relevance to the issues before the Court.

In sum, the Court credits Mr. Damelio's testimony and finds that Petitioner never expressed dissatisfaction with the sentence or even indirectly suggested that he wanted to pursue an appeal, let alone expressly requesting that relief. The Court further finds that Mr. Damelio would have no reason to believe that Petitioner wanted to pursue an appeal. The Court finds that Petitioner's claims set forth in his written submissions—which he elected not to have tested through cross-examination by presenting his own live testimony at the evidentiary hearing—are simply not credible and unpersuasive in view of Mr. Damelio's credible testimony.

## DISCUSSION

### A. Legal Standard

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). "Pursuant to the well-known two-part test of *Strickland v. Washington,* 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). "Under the *Strickland* test, a petitioner carries a heavy burden," *Burton v. Phillips*, 303 F. App'x 954, 955 (2d Cir. 2008), as "[j]udicial scrutiny of counsel's performance must be highly deferential," and "counsel is strongly presumed to have rendered adequate assistance," *Strickland*, 466 U.S. at 689-90.

"[A] lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable, and . . . where counsel's error leads to 'the forfeiture of a proceeding itself,' prejudice will be presumed." *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006) (citation omitted) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). "When counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would likely have had merit." *Flores-Ortega*, 528 U.S. at 477 (alterations and quotation omitted). "[E]ven after a waiver, a lawyer who believes the requested appeal would be frivolous is bound to file the notice of appeal and submit a brief[.]" *Campusano*, 442 F.3d at 771-72; *see Garza v. Idaho*, 139 S. Ct. 738, 746-47 (2019) (holding counsel's failure to file a notice of appeal after an express request by the defendant constituted ineffective assistance of counsel despite the presence of an appeal waiver in the plea agreement).

In addition, there is no per se rule requiring counsel in all cases to "either (1) [] file a notice of appeal, or (2) [] discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly." *Flores-Ortega*, 528 U.S. at 478. Rather, "[i]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Id.* In other words, whether counsel advised "the defendant about the advantages and disadvantages of taking an appeal, and ma[de] a reasonable effort to discover the defendant's wishes." *Id.* If

counsel did so consult and the defendant did not express a desire to appeal, then plainly there was no ineffective assistance of counsel. *Id*.

However, even where counsel does not consult with the defendant, that does not per se constitute ineffective assistance of counsel. *Id*. Rather, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. "In making this determination, courts must take into account all the information counsel knew or should have known." *Id*. Factors to consider are whether the defendant pleaded guilty or went to trial; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all appeal rights. *Id*.; *see Padin v. United States*, 521 F. App'x 36, 38 (2d Cir. 2013) ("In determining whether a rational defendant would want to appeal or whether the defendant reasonably demonstrated an interest in appealing, a court must consider all the relevant factors, including whether the conviction followed a trial or a guilty plea, whether the defendant received the sentence bargained for as part of a plea, and whether the plea expressly reserved or waived some or all appeal rights.").

As then-Circuit Judge Sotomayor explained in *Campusano*, if counsel failed to consult *and* there is a reasonable probability that, but for counsel's deficient failure to consult the defendant would have timely appealed, then prejudice is presumed:

> Admittedly, applying the *Flores-Ortega* presumption to post-waiver situations will bestow on most defendants nothing more than an opportunity to lose. There will not be many cases in which a defendant whose attorney fails to file a notice of appeal after a plea agreement and a waiver of appeal, and whose hypothetical appeal seems meritless during ineffective-assistance habeas review, eventually prevails. But rare as they might be, such cases are not inconceivable, and we do not cut corners when Sixth Amendment rights are at stake. A defendant who executes a waiver may sign away the right to appeal, but he or she does not sign away the right to the effective assistance of counsel.

442 F.3d at 777; *see also Flores-Ortega*, 528 U.S. at 486 (discussing how "performance and prejudice prongs may overlap, [but] they are not in all cases coextensive. To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.").

**B. <u>Alleged Failure to Follow Request to File Notice of Appeal</u>**

With respect to the allegations that Mr. Damelio disregarded Petitioner's express instructions to file a notice of appeal, there is no merit to this claim. The Court credits Mr. Damelio's testimony that Petitioner never requested, either directly or indirectly, that he file a notice of appeal on this behalf, and the Court rejects Petitioner's claims otherwise. Thus, while the failure to follow a client's instructions to file a notice of appeal constitutes ineffective assistance of counsel, there was no such failure in this case. As a result, the § 2255 petition fails on this ground.

### C. <u>Alleged Failure to Consult</u>

Here, the record is not entirely clear as to the breadth of discussions between Mr. Damelio and Petitioner about his right to appeal. In other words, while the Court does not credit Petitioner's allegations that he expressed dissatisfaction with the sentence or expressed any desire to appeal, the record evidence is thin as to the nature of the discussions between Mr. Damelio and Petitioner about his appellate rights.

In fact, very little testimony was elicited by either party at the April 20, 2023 evidentiary hearing, about any conversations between Mr. Damelio and Petitioner concerning his appellate rights. Mr. Damelio outlined his practice of discussing appellate rights with his clients, both before and after sentencing. (Dkt. 401 at 29-30, 39). There is also support in the record that Mr. Damelio spoke to Petitioner on December 15, 2016, and visited him on December 26, 2016. (*Id*. at 22-23). Moreover, Mr. Damelio testified that he spoke to Petitioner in the courtroom after sentencing, but he could not recall whether he went back to the Marshals lock-up to talk further with him. (*Id*. at 38).

Petitioner, on the other hand, claims that Mr. Damelio spoke to him in the Marshals lock-up after the sentencing, that he expressed his dissatisfaction with the sentencing, and asked that Mr. Damelio file a notice of appeal. (Dkt. 315). Petitioner further contends that Mr. Damelio stated that an appeal was not possible due to the appellate waiver, but that he would convey Mr. Brown's desire to appeal to the District Court (meaning that he would file the notice of appeal). (*Id*.). In another submission, Mr. Brown contends with no specifics that "sentencing counsel did not consult with [him] concerning the advantages and disadvantages of filing a direct appeal," (Dkt. 305 at 6; *see also* Dkt. 292 at 21

("Counsel did not advise Mr. Brown of the law or consult with Mr. Brown on the consequences of not filing a direct appeal. If counsel had advised and consulted, then Mr. Brown would have appealed.")).

Petitioner has not backed off from any of his sworn submissions. Thus, in an attempt to reconcile the various submissions from Petitioner, one could conclude that his claim is not that Mr. Damelio's failure to consult caused him not to pursue an appeal, but rather that he expressly asked Mr. Damelio to file a notice of appeal, understood that a notice of appeal would be filed on his behalf, and yet Mr. Damelio failed to do so. As noted above, the Court does not credit this version of events, and finds that Petitioner never expressed any dissatisfaction with his sentence and never requested Mr. Damelio to file a notice of appeal. Because the crux of Mr. Brown's claim is not a failure to adequately consult, but rather a failure to follow his express directions to file a notice of appeal, it is at least arguable that the Court need not resolve whether Mr. Damelio adequately consulted with Mr. Brown about his appellate rights. *See Campusano*, 442 F.3d at 773 n.3 ("In the present case, Campusano alleges that he requested an appeal, but that his requests were ignored, so we need not examine the consultation or decide whether a waiver would affect the consultation analysis under *Flores-Ortega*.").

Nonetheless, reaching the issue of whether Mr. Damelio adequately consulted with Petitioner about his appellate rights, Petitioner's argument on this point hinges on accepting his contention that he expressed dissatisfaction with the outcome of the case. (*See* Dkt. 405 at 5). But again, the Court finds Petitioner's statements in that regard not true—in other words, Petitioner never expressed any dissatisfaction during the sentencing or

afterward about his sentence (until over a year later, when he elected to file the § 2255 petition).

The Court concludes that Mr. Damelio had no reason to think that either a rational defendant would want to appeal or that Petitioner demonstrated any interest in appealing. There are several reasons for that conclusion. First, as noted above, the Court does not credit Petitioner's claims that he expressed any dissatisfaction with the sentence or any desire to appeal. Second, Petitioner pleaded guilty pursuant to a plea agreement that calculated the aggregate Sentencing Guideline range as 248 to 295 months and contained a commitment by each party not to argue for a sentence outside that range. (Dkt. 224 at 8). At the plea hearing, the Court engaged in an extensive colloquy with Petitioner, including confirming his understanding of this part of the agreement and that he could not argue for a sentence outside the range of 248 to 295 months in prison. (Dkt. 242 at 38). Third, Petitioner's plea agreement contained an appellate waiver wherein he agreed not to appeal or otherwise challenge an aggregate prison sentence in the range of 248 to 295 months. (Dkt. 224 at 10). Again, the Court questioned Petitioner about this part of the agreement at his plea hearing and he confirmed his understanding of this provision. (Dkt. 242 at 39-40). Fourth, the sentence imposed by the Court was 248 months in prison—in other words, at the lowest end of the range agreed to in the plea agreement—that Petitioner agreed he would not seek to reduce or otherwise challenge. Fifth, the plea agreement provided a significant benefit to Petitioner because it resulted in the dismissal of four pending counts of violations of 18 U.S.C. § 924(c)(1)(A) which, if convicted, at the time would have resulted in a potential sentencing range of 1,148 to 1,195 months in prison. (*See* Dkt. 266

at ¶ 104). *See McAllister v. United States*, No. 19-2514, 2021 WL 5816410, at *2 (2d Cir. Dec. 8, 2021) (concluding that a rational defendant would not have wanted to appeal where the defendant received a significant benefit from his plea agreement involving the dismissal of counts carrying much higher sentencing exposure).

Considering the totality of the circumstances, there is no rational basis upon which Mr. Damelio should have believed Petitioner would want to pursue an appeal, and there is no credible evidence in the record to the contrary.[5] Similarly, there is no credible evidence in the record to conclude that if Mr. Damelio and Petitioner had a fulsome discussion about his appeal rights, he would have pursued an appeal. *See Todd v. United States*, 165 F. App'x 99, 102 (2d Cir. 2006) ("Under these circumstances, Todd cannot 'demonstrate that there is a reasonable probability that,' had counsel consulted him, 'he would have timely appealed.'"). Thus, Petitioner has failed to satisfy either prong of the *Strickland* inquiry, and the § 2255 petition fails on this ground.

---

[5] Petitioner argues without any support that there were nonfrivolous grounds for an appeal "including arguable ineffective assistance of counsel claims going to the validity of the [appellate] waiver." (Dkt. 405 at 5). This claim is conclusory and lacks any support in the record. Indeed, the plea colloquy reflects that Petitioner was entirely satisfied with the advice he received from counsel and was entering into the plea in a knowing, voluntary, and intelligent manner. (*See* Dkt. 242). It was only after the plea that Petitioner attempted to backtrack from the plea hearing's sworn statements, but he ultimately withdrew that motion to withdraw his plea. (*See* Dkt. 239; Dkt. 246). And the Court previously rejected Petitioner's claims of ineffective assistance of counsel with respect to the attorneys representing him during the plea hearing and subsequent withdrawal of the motion to withdraw the plea. (Dkt. 333 at 12-13).

### D. Alternative Request to File Late Notice of Appeal

Petitioner alternatively argues—for the first time in his post-hearing submission—that if the Court does not grant his petition, the Court should nonetheless "exercise its discretion in equity" and grant Petitioner leave to file a late notice of appeal under Rule 4(b)(4) of the Federal Rules of Appellate Procedure. (Dkt. 402 at 19-21). Petitioner contends that there were "gaps in representation stemming from" the deaths of two of his attorneys prior to sentencing, and he suggests that sentencing letters were written in his support that were submitted to his prior counsel who had passed away, but they were not submitted to the Court. (*Id*. at 19-20). Petitioner concludes that this must mean that Mr. Damelio did not obtain Mr. MacAulay's "complete case file." (*Id*. at 20).

Petitioner cites two unreported district court cases in support of his contention that the Court has discretion under these circumstances to extend his time to appeal beyond the limits imposed by Rule 4(b)(4). In one of the cases—*Regalado v. United States*, No. 09 CIV 7725 SAS, 2010 WL 5393503 (S.D.N.Y. Dec. 28, 2010)—the district court concluded that the defense attorney had a duty to consult with his client about a decision rejecting a post-sentence motion to reduce his sentence, that he failed to even inform his client about the decision, and that if counsel had consulted with his client he likely would have pursued an appeal. *Id*. at *3-4. It is not clear how Petitioner believes *Regalado*—where the court found both prongs of *Strickland* satisfied—supports his contention that even though he failed to satisfy the *Strickland* standard he should nonetheless be granted an opportunity to pursue an untimely appeal.

In the other case relied upon by Petitioner—*United States v. Delileon*, No. 90 CR. 553 (KMW), 2008 WL 5190921 (S.D.N.Y. Dec. 1, 2008)—the court denied the defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) but the pro se, incarcerated defendant never received the decision, in part because the clerk's office staff failed to follow up in accordance with normal procedures when the mailing was returned as undeliverable. *Id*. at *1. As a result, the court reissued its decision so as to trigger another time period for filing a notice of appeal and make the defendant's notice of appeal timely. *Id*. at *3. However, the court noted that if the Second Circuit rejected its reissuance of its decision, then the appeal would be untimely and may not be heard by the Second Circuit if the government objected. *Id*. at *3-4. The matter was not addressed on appeal, thus suggesting that the government did not object or challenge the district court's handling of the untimeliness issue. *See United States v. Delileon*, 353 F. App'x 468 (2d Cir. 2009). In contrast to *Delileon* which dealt with a court's post-sentencing decision, Petitioner has not cited any authority for the proposition that the Court could somehow exercise its equitable authority to reissue a judgment of conviction almost seven years after it was entered.

In contrast to the cases relied on by Petitioner, there is no suggestion that Petitioner was not aware of the Court's sentencing decision—of course, he was present at the time of sentencing. (*See generally* Dkt. 295-1 at 75-99 (sentencing transcript)). Moreover, the government has specifically objected to allowing Petitioner to pursue an untimely notice of appeal. (Dkt. 404 at 13). Rule 4(b)(1)(A) imposes a 14-day time limit on a defendant filing a notice of appeal. A district court has discretion to extend that time period "for a

period not to exceed 30 days" when it makes a finding of "excusable neglect or good cause". Fed. R. App. P. 4(b)(4). Although the Second Circuit has determined that Rule 4(b) is not jurisdictional, it has also determined that when the government objects to the untimeliness of a defendant's appeal, Rule 4(b) is "mandatory and inflexible." *United States v. Frias*, 521 F.3d 229, 234 (2d Cir. 2008).

Petitioner is far beyond the 30-day extension time limit permitted by Rule 4(b)(4), and the government has objected to any extension of time. Also, Petitioner never raised this alternative request to file a late notice of appeal until his post-hearing memorandum submitted after the evidentiary hearing. But even if Petitioner was able to overcome those hurdles, the Court rejects the notion that equity favors an extension of time. First, the record does not support the contention that there were gaps in Petitioner's representation. While Mr. MacAulay did pass away unexpectedly, necessitating Mr. Damelio's prompt substitution,[6] Mr. McKain was replaced by Mr. MacAulay not because of his death,[7] but rather because Petitioner became disenchanted with his representation—as he had with the two other attorneys assigned prior to Mr. McKain. *See* note 2, *supra*. Second, the

---

6 Mr. MacAulay passed away on December 6, 2016. *See Obituary of Paul D. MacAulay*, Anthony Funeral & Cremation, https://www.anthonychapels.com/obituaries/Paul-D-MacAulay?obId=8395575 (last visited Nov. 11, 2023). Three days later, the Court scheduled an attorney appointment proceeding with Mr. Damelio (Dkt. 250), which was held on December 13, 2016 (Dkt. 253).

7 Mr. McKain passed away unexpectedly on September 1, 2017, *see Obituary of Kevin K. McKain, Esq.*, Farrell-Ryan Funeral & Cremation Services, https://www.farrell-ryan.com/obituaries/Kevin-McKain?obId=5954113 (last visited Nov. 11, 2023), well over a year after he was relieved from any further representation of Petitioner (*see* Dkt. 238 (memorializing appearance on July 27, 2016, when Mr. McKain was relieved as counsel)).

suggestion that Mr. Damelio did not obtain Mr. MacAulay's entire file is completely speculative. Not only was this an area not explored in any detail at the evidentiary hearing, but Mr. Damelio's testimony at least suggests that he did receive Mr. MacAulay's file. (Dkt. 401 at 25). Third, and most importantly, even if the Court could do so at this late stage with an objection by the government, Petitioner has wholly failed to establish any basis for the Court to "exercise its discretion in equity" (*see* Dkt. 402 at 20) to grant an extension of time to file a notice of appeal. Petitioner's statement that he requested Mr. Damelio to file a notice of appeal and he thought that he would do so, is just not credible. The reality is that Petitioner received the sentence that he anticipated and did not desire to pursue an appeal—until over a year later when he decided to raise the issue as part of his § 2255 petition.

## CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner has failed to establish that Mr. Damelio provided ineffective assistance of counsel with respect to not filing a notice of appeal or otherwise failing to consult with Petitioner concerning an appeal, and the § 2255 petition (Dkt. 292) is denied. The Court similarly denies Petitioner's alternative request to file a late notice of appeal pursuant to Federal Rule of Appellate Procedure 4(b)(4).

The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). The Clerk of Court is instructed to close case number 6:13-CR-06006 EAW.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: November 14, 2023
Rochester, New York